OPINION of the Court, by
Judge Clark.
This cause, as stated in the bill, and as appears from the testimony, is in substance this : . .
Edward Ball, in March 1780, employed James Ball, the Complainant, to come to Kentucky and locate some land warrants, for which he agreed to give him 250 acres of land, and pay all expenses. The services were performed by James Ball agreeably to the contract. In 1783 James Ball carnea second time to Kentucky, at the request of Edward, to bring money for the purpose of paying the necessary .fees, for surveying, &c. In 1784 James Ball removed with his family to Kentucky, and. was directed by Edward Ball (who was his father-in-law) to settle upon the tract of land in dispute, containing 300 acres. He settled .upon a tract he owned adjoining it, and made some small improvements upon the 300 acres.
Edward Ball removed with his family to Kentucky in the year —— and by the permission of James Ball, settled upon the land In contest, until he could settle H& own, in safety from the Indians.' He then agreed to convey to James Ball the 300 acres (conceiving k to be of inferior quality) in discharge of the agreement before stated, which was agreed to by James. Edward Ball, in 1788, before he could settle with safety upon his own land, died : in his last sickness, he. expressed some uneasiness about the situation of his family, not having made a permanent settlement for them. James Ball then agreed ifhis heirs or devisees would convey to him 250 acres of land elsewhere, that pleased him, he would take it, and suffer his family to remain. This was never done. The original and subsequent agreements between James and Edward Ball, were by parol. The land in contest was devised to the appellant, who some short time after the death of Edward Ball, executed his bond to James Ball for 250 acres of land on Sugar creek, Madison county, in satisfaction for the land, in contest. Which .contract he has since avoided, on account of infancy; and obtained a judgment in ejectment against the complainant for the 300 : to enjoin further which and to *66 for the 300 acres, this suit wal obtain a conveyance brought.
A parol contrail for land? previous Co the ftatute of frauds, is valid, aod will be enforced in equity* .
Nor will it be Avoided by pa-to! agreement fubfequent to the ftatute, which cannot be enforced*
in detail, and ½ 7'he answer of William Bali denies the general, every material allegation in the bill, and relies upon an allegation that Edward Ball Mad settled with, and paid James Ball for his services in locating, &c. 5 that the complainant had given up the 300 acres for 250 devised by Edward to his wife j and on the statute of frauds and perjuries.
The contract charged in the bill to have been made between the complainant and Edward Ball, and the performance on the part of the complainant, are abundantly proven. The reduction of the agreement in 1784 to definite certainty, by fixing upon the land that should bé received in discharge of the contract, gave to the complainant a lien oh that particular tract, which, when opposed by the interest of Edward Ball, of a volunteer . tinder him, must prevail. Nor can it be an objection to the chancellor’s decreeing a specific execution of the agreement, that the same was by parol ; for the statute of frauds arid perjuries did not pass until .1785, and did not take effect until the first of January 1787, previous to which period the contract was complete, arid the cbm* plainant had taken possession of the land.
We think the complainant’s right to this land cannot be defeated By the settlement stated to have taken place between James rind Edward Ball. Thrit settlement was confined to personal contracts only, and not to the land in question. Upon this subject there is a great deal of contradictory testimony, But the weight and credibility of the evidence are opposed to the idea that the land was the subject of settlement. The conduct of Edward Ball, after this settlement should have taken place, is conclusive that he did not conceive himself released from his contract respecting the land ; for when James was about to remove to Kentucky with his family, he was directed by Edward to settle upon the land in contest; and some years .afterwards, when he moved to this country, agreed that James should have that land in discharge of his contract, and frequently advised him to sell a part of it for the payment of his debts. Nor was his right divested by what passed in 17SS, with Edward Ball in his last sickness. That appears'to have been a conditional agreement (if one at *67 ail) that was not performed on the part of Edward or his heirs. But if the contract hadbeen an absolute one, it was by parol, and under the statute of frauds and perjuries could not be enforced.
B. strife? to his daughter, the wife of A. 250 acres of iaodj it is no fansfa&km of the like <|uanti« ty due from the teilaeor to A. ⅛ hh own right»
The devise, by Edward Ball of the 250 acres of land, to the wife of the complainant, we consider as a bounty, and not as satisfaction for the land in contest: a devise is in the nature of a gratuity, and will be so copsidered, unless other circumstances plainly evince the intention of the testator to be otherwise, nothing of which appears in this cause. There can be no grounds to say that a devise of 250 acres of land to the wife of the complainant, is a satisfaction of 250 due by the testator to the complainant in his own right,
Pecree affirmed.